UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN D. LASLAU,

    Plaintiff,                      CIVIL ACTION NO. 12-10082

    v.                              DISTRICT JUDGE GERSHWIN A. DRAIN

                                     MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff John D. Laslau challenges the Commissioner of Social Security's final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 20, 28). Plaintiff also filed additional papers for the Court's consideration and a response to Defendant's motion (Dkt. Nos. 17, 23, 29). Judge Robert H. Cleland referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 8). The case was subsequently reassigned to Judge Gershwin A. Drain (Dkt. No. 22).

**I.   RECOMMENDATION**

Because substantial evidence supports the ALJ's decision, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II. REPORT**

*A. Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on September 22, 2008. He also applied for supplemental security income on September 29, 2008. In both applications, Plaintiff alleged he became disabled on October 22, 2007 (Tr. 13). The Commissioner initially denied Plaintiff's application (Tr. 13). Plaintiff appeared with counsel for a video hearing before Administrative Law Judge ("ALJ") Michael R. McGuire, who considered the case *de novo*.[1] In a written decision, the ALJ found Plaintiff was not disabled (Tr. 13-23). Plaintiff requested an Appeals Council review (Tr. 1). On November 4, 2011, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

*B. ALJ Findings*

Plaintiff was 42 years old on his alleged disability onset date. He is a high school graduate with some college education. Plaintiff previously worked as a field service representative (Tr. 22, 33). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since October 22, 2007 (Tr. 15).

At step two, the ALJ found that Plaintiff had the following "severe" impairments:

> degenerative disc disease/herniated nucleus pulposus of the cervical spine with radiculopathy,[2] degenerative disc disease of the lumbar spine, bilateral

---

[1] Plaintiff is no longer represented by counsel.

[2] Radiculopathy is a disease of the nerve roots. *See Dorlands Illustrated Medical Dictionary*, 1595 (31st Ed. 2007).

temporomandibular joint disorder,[3] worse on the left than the right, obesity, sleep disturbance on a continuous positive airway pressure (CPAP) machine,[4] and is status post closed head injury with headaches.

(Tr. 15).

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations (Tr. 17).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> light work . . . except [Plaintiff] must be able to sit and stand at will. [Plaintiff] should avoid climbing, crawling, crouching, or kneeling and should only perform other postural activities on occasion. [Plaintiff] is capable of performing reaching in all directions on occasion, and is limited to unskilled work due to pain interfering with his concentration.

(Tr. 17-18).

At step four, the ALJ found that Plaintiff could not perform his previous work (Tr. 21-22).

At step five, the ALJ denied Plaintiff benefits, finding Plaintiff could perform a significant number of jobs available in the national economy, such as host (150,000 available jobs), information clerk (80,000 available jobs) and inspector (100,000 available jobs) (Tr. 22).

---

[3] "Temporomandibular joint (TMJ) syndrome is pain in the jaw joint that can be caused by a variety of medical problems." *See* http://www.emedicinehealth.com/temporomandibular_joint_tmj_syndrome/article_em.htm (last visited January 25, 2013).

[4] "Continuous positive airway pressure therapy (CPAP) uses a machine to help a person who has obstructive sleep apnea (OSA) breathe more easily during sleep." *See* http://www.webmd.com/sleep-disorders/sleep-apnea/continuous-positive-airway-pressure-cpap-for-obstructive-sleep-apnea (last visited January 29, 2013).

    *C.*    *Administrative Record*

        **1.**    **Plaintiff's Hearing Testimony and Statements**

Plaintiff testified he has neck pain that radiates to his right hand, pain in his lower back, right leg pain, headaches that become more painful when he concentrates and problems with his temporomandibular joint (Tr. 35, 37-41). The pain intensifies when he performs repetitive motions and when he remains in one position for too long (Tr. 36, 38). To help relieve his pain, Plaintiff takes medications, uses a heating pad at night and takes hot baths (Tr. 36-37).

Plaintiff sometimes takes naps to build energy; he needs a CPAP machine to sleep (Tr. 40, 43, 46). He also uses a cane when he walks more than 10-15 minutes (Tr. 45).

Despite his problems, Plaintiff can paint a ceiling (with breaks every 30-45 minutes), grocery shop, maintain his house (although he does minimal cleaning), cook, wash clothes, cut the grass (with breaks every 30-45 minutes), drive and use a snow blower (Tr. 36, 38, 41-42).

        **2.**    **Vocational Expert**

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual who: is Plaintiff's age and has his educational and vocational backgrounds. The individual can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand and walk six hours in an eight-hour workday with the option to sit and stand at will; push and pull 20 pounds; and occasionally reach in all directions. He cannot climb, crouch, crawl or kneel; can only occasionally engage in other postural activities; and is limited to simple, unskilled work (Tr. 47-48). The VE testified that such an individual could perform work in the unskilled, light category as a host (150,000 jobs available nationally; 10,400 jobs in Michigan), information clerk (80,000 jobs available nationally; 6,000 jobs in Michigan) and inspector (100,000 jobs available nationally; 5,500 jobs in Michigan) (Tr. 48-49). The VE indicated that the *Dictionary of Occupational Titles* ("DOT") does not address work that accommodates the option to sit and stand at will; therefore, the jobs

were based on her experience performing direct job placement services, labor market surveys and videotape job analysis for 15 and a half years (Tr. 49).

When the ALJ added that the individual would have to lie down periodically throughout the day or take unscheduled naps one to three times a day for 30 minutes to an hour, the VE testified that such an individual would be precluded from work (Tr. 49, 54). The individual would also be precluded from work if he was off task 20 percent of the workday (Tr. 49-50).

Plaintiff's attorney added to the hypothetical that the individual could only occasionally use his dominant hand, stand and walk. The VE testified that the inspector position would be eliminated, and the host and information clerk positions would be reduced by 70 percent (Tr. 52-53).

### D. Plaintiff's Claims of Error

The Court liberally construes Plaintiff's *pro se* pleadings, and finds he raises the following arguments:[5]

(1)   the ALJ improperly applied the treating-source rule (Dkt. No. 20 at 2-3);

(2)   statements from non-treating physicians are not entitled to any weight (Dkt. No. 29 at 4-5);

(3)   it is unknown whether the VE was actually under oath since she appeared by telephone (Dkt. No. 29 at 2);

(4)   the jobs identified by the VE were inconsistent with the DOT (Dkt. No. 17 at 1; Dkt. No. 29 at 2);

---

[5]Plaintiff also argues: (1) the VE incorrectly testified that there are 330,000 jobs available for a "crippled man" (Dkt. No. 17 at 1; Dkt. No. 20 at 1; Dkt. No. 29 at 3); (2) the ALJ made his decision based "solely" on the testimony of a VE who never examined Plaintiff (Dkt. No. 20 at 1; Dkt. No. 29 at 3); (3) he did not have an expert at the hearing (in addition to his attorney) (Dkt. No. 29 at 1-2); (4) the VE was not reliable (Dkt. No. 29 at 2-3); and (5) the ALJ rendered his decision too quickly (Dkt. No. 29 at 7). Plaintiff did not provide any support for these arguments, and the Court finds they lack merit.

(5)  the ALJ erred by concluding that Plaintiff's drive to Springfield, Illinois meant his testimony that he could not sit for long periods was not credible, because he took many breaks during his drive to Illinois (Dkt. No. 29 at 5)[6]; and

(6)  the ALJ incorrectly stated that Plaintiff's visited a health club for "full work out" sessions (Dkt. No. 29 at 5)[7].

## III. DISCUSSION

### A. *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

---

[6] The ALJ stated, "[Plaintiff] . . . alleged that he was unable to do any sitting, standing, or walking for a long period of time. However, [Plaintiff] testified that within the past six months, he drove from Detroit, Michigan to Springfield, Illinois. Moreover, on a regular basis, for fun[,] [Plaintiff] drives around his neighborhood listening to music" (Tr. 19). It was appropriate for the ALJ to base his credibility determination on Plaintiff's inconsistent testimony. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476-477 (6th Cir. 2003) (holding that an ALJ's credibility determination was reasonably based on plaintiff's inconsistent testimony). In any event, the ALJ accommodated Plaintiff's inability to sit for long periods of time by incorporating the option to sit and stand at will in his RFC determination.

[7] This statement is not contained in the ALJ's decision. The ALJ correctly stated, "[Plaintiff] testified that he used to go to a sauna steam room at a health club, and is thinking about doing so again" (Tr. 18).

-6-

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses" (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

  *C.* *Analysis*
    **1.** **Treating-Source Rule**

On July 14, 2010, Dr. Ali A. Fadel issued a Disability Certificate that says "[Plaintiff] was treated in [his] office on 03/28/09 for injuries sustained in [a] Work Related accident on 10/22/07. It is [his] professional opinion [that Plaintiff] is disabled from the following: Employment, which involves bending, lifting, twisting, and prolonged standing from 03/28/09 to 09/20/10" (Tr. 551)[8].

Under the treating-source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p. Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)). In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242. "[A]

---

[8]The ALJ accommodated Plaintiff's restriction from prolonged standing by including the option to sit and stand at will.

-9-

failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243; *see also Wilson*, 378 F.3d at 544 ("[t]he regulation requires the agency to "give good reasons" for not giving weight to a treating physician in the context of a disability determination") (citation omitted).

The ALJ stated that "Dr. Fadel's opinion is given great weight, as he has developed a treating relationship with [Plaintiff], and his opinion is supported by monthly treatment notes, which are generally consistent, with the other medical evidence of record" (Tr. 21). Based on this conclusion, Dr. Fadel's opinion would normally be entitled to controlling weight. However, "[a]n ALJ may not give a treating physician's opinion controlling weight if [Plaintiff's] testimony regarding [his] daily activities contradicts that opinion." *Chambers v. Comm'r of Soc. Sec.*, 2012 WL 899531 at *4 (M.D. Fla. March 16, 2012) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 1004)). Plaintiff's activities of daily living are inconsistent with Dr. Fadel's assessment; he performs activities that require bending, lifting and twisting: grocery shopping, maintaining Plaintiff's house, cooking and washing clothes. Therefore, the Court finds Dr. Fadel's opinion was not entitled to controlling weight, and substantial evidence supports the ALJ's decision to give his opinion "great" weight.

### 2. Non-Examining Sources

Plaintiff argues that statements from non-treating physicians are not entitled to any weight. This Magistrate Judge disagrees. Non-examining sources are viewed as "highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability

claims under the [Social Security] Act." SSR 96-6p. Accordingly, the ALJ weighs state agency physician opinions under the same factors as treating physicians. *See Dee v. Comm'r of Soc. Sec.*, 2011 WL 4072299 at *12 (N.D. Ohio Sept. 7, 2011).

### 3. Oath to the VE

Plaintiff next argues that it is unknown whether the VE was actually under oath since she appeared by telephone. Although Plaintiff could not physically observe the VE swear or affirm to tell the truth, an oath was administered to the VE. *See* Tr. 46 ("[t]he Vocational Expert, MICHELLE PETERS, having been first duly sworn, testified as follows"). Even assuming an oath was not administered to the VE, any error was harmless. *See Donaghy v. Comm'r of Soc. Sec.*, 2012 WL 6808516 at *2 (E.D. Mich. Dec. 14, 2012) Report and Recommendation adopted, 2013 WL 85236 (E.D. Mich. Jan. 8, 2013) (failure to give oath in social security case is waived and any error harmless in absence of timely objection).

### 4. VE's Testimony was Inconsistent with the DOT

The VE conceded that the DOT does not account for the option to sit and stand at will; however, based upon her experience, that option is available in those positions she believed Plaintiff could perform:

> Q: And are these jobs that you've given, Ms. Peters, are they consistent with the way they're described in the Dictionary of Occupational Titles as well?
>
> A: No, Your Honor, because of the sit/stand option at will, Your Honor. That is not defined in the Dictionary of Occupational Titles. Therefore[,] it comes from my experience performing direct job placement services, labor market surveys, and videotape job analysis for the last 15 and a half years.

(Tr. 49). "The VE was permitted to rely upon her own experience, even if it in some way conflicted with the DOT." *Dantzer v. Comm'r of Soc. Sec.*, 2011 WL 1113446 at *4 (N.D. Ohio March 24, 2011) (citing SSR 00-4p, 2000 WL 1898704 at *2 ("[e]vidence from VEs . . . can

include information not listed in the DOT," including information available "from a VE's . . . experience in job placement or career counseling")). And, ALJs have an affirmative duty to ask VEs if their testimony "conflicts with the information provided in the DOT." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (citing SSR 00-4p, 2000 WL 1898704 at *4). The ALJ complied with the requirements of SSR 00-4p. "The ALJ was not obliged to further challenge the veracity of the vocational testimony. Further, Plaintiff's counsel did not dispute any of the VE's job findings. As such, the ALJ's adoption of the uncontradicted testimony does not provide grounds for remand." *Thomas v. Comm'r of Soc. Sec.*, 2012 WL 655410 at *4 (E.D. Mich. Nov. 27, 2012) (internal citations omitted).

### 5. Sentence Six Remand

Plaintiff asks the Court to consider additional evidence that was not before the ALJ:

(1) a Vocational Rehabilitation Evaluation dated March 21, 2011 from Rehabilitation Consultant Dr. Robert B. Ancell (Dkt. No. 17 at 2; Dkt. No. 20 at 1-2; Dkt. No. 29 at 2). Dr. Ancell concluded:

> From a vocational rehabilitation standpoint, [Plaintiff] has sustained very significant vocationally limiting problems. He is totally unable to do any of his past relevant work. His previous earning ability was in the $45,000 to $50,000 per year category. Given the nature and extent of his current ongoing difficulties and problems, he is totally unemployable.

(Dkt. No. 1 at 11);

(2) a Stokes Evaluation dated April 30, 2009 from Barbara Feldman, M.A., L.P.C., CCM (Dkt. No. 17 at 2; Dkt. No. 20 at 1-2; Dkt. No. 29 at 2). Ms. Feldman concluded:

> Based on a labor market survey, I was only able to identify one position that would afford [Plaintiff] the opportunity to earn his pre-injury rate of pay[.]
>
> While performing the labor market survey, I noted that many job openings were through employment[] services which required experience in a field of electric engineering that [Plaintiff] did not possess (energy storage systems, data mining

-12-

   tools etc.), or paid an hourly rate of pay well below that which [Plaintiff] had
   earned when he was injured.

(Dkt. No. 1 at 17);

(3)  a report from Basha Diagnostics, P.C. dated May 20, 2012 (Dkt. No. 17 at 2).  The report says Plaintiff was diagnosed with bilateral carpal tunnel syndrome, and had mild electromyographic evidence of bilateral C5-7 nerve root irritation (Dkt. No. 17 at 5);

(4)  an Industrial Rehabilitation Functional Capacity Evaluation dated January 9, 2012 from Mary Beth Monte, OTR (Dkt. No. 17 at 2; Dkt. No. 20 at 2).  Ms. Monte opined that Plaintiff should work at home, doing computer work where he can work at his own pace and alternate between sitting and standing as needed (Dkt. No. 17 at 9); and

(5)  a prescription from Dr. Ali A. Fadel dated September 24, 2012 that says "[Plaintiff] was re-evaluated by me today for his disability status. [Plaintiff] is totally disabled and his disability is permanent" (Dkt. No. 23 at 2-3; Dkt. No. 29 at 5).

The Court construes Plaintiff's request as an argument for a sentence six remand.  Sentence six of 42 U.S.C. § 405(g) provides: "The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"  42 U.S.C. § 405(g).  As its text indicates, a sentence six remand is only appropriate where the evidence not before the ALJ is "new" and "material," and that there was "good cause" for not producing the evidence earlier.  *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986)).

   Evidence is "new" only if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  Further, "new" evidence must not be merely cumulative of evidence already part of the record.  *Wilson v. Comm'r of Soc. Sec.*, No. 10-13828, 2011 WL 2607098, at

*6 (E.D. Mich. July 1, 2011); *see also Carroll v. Califano*, 619 F.2d 1157, 1161 (6th Cir.1980) ("[W]here the issue in question has already been fully considered, further evidence on that point is merely cumulative").

New evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("Material evidence is evidence that would likely change the Commissioner's decision") (citing *Sizemore*, 865 F.2d at 711)). A corollary to this requirement is that "material" evidence must be "probative of the claimant's condition for the time period for which benefits were denied." *Wilson*, 2011 WL 2607098, at *6; *see also Wyatt v. Sec'y of HHS*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is . . . immaterial").

A plaintiff shows "good cause" by providing a reasonable justification for failing to acquire and present the new and material evidence to the ALJ. *Willis v. Sec'y of HHS*, 727 F.2d 551, 554 (1984) (per curiam). Good cause "contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue*, 2009 WL 700057 at *6 (W.D.Ky. Mar. 13, 2009) (internal citations omitted).

Here, at a minimum, Plaintiff cannot meet the materiality component. Dr. Ancell's conclusion that Plaintiff is "totally unemployable," and Dr. Fadel's conclusion that Plaintiff is "totally disabled" are issues reserved to the Commissioner and are not controlling. *See* 20 CFR § 404.1527(d)(3) ("[w]e will not give any special significance to the source of opinion on issues reserved to the Commissioner"). The Stokes Evaluation, Basha Diagnostics report, and the RFC

evaluation do not impose greater restrictions on Plaintiff than the ALJ imposed. Accordingly, a sentence six remand is not warranted.

## IV. CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

                                                s/Mark A. Randon
                                                Mark A. Randon
                                                United States Magistrate Judge

Dated: January 31, 2013

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 31, 2013, by electronic and/or ordinary mail.*

*s/Eddrey O. Butts*
*(Substitute)*
*Case Manager*